IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ANTON E. KRAJEWSKI,

                    Plaintiff,

vs.

UNION PACIFIC RAILROAD
COMPANY,

                    Defendant.

4:23-CV-3097

MEMORANDUM AND ORDER

The plaintiff, Anton E. Krajewski, seeks damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* Filing 1. The plaintiff's claims concern personal injuries he allegedly sustained in the scope of his employment with the defendant, the Union Pacific Railroad Company. Filing 1. The plaintiff alleges that he slipped on ice in a railyard because Union Pacific failed to provide a reasonably safe place to work.

Union Pacific has moved for summary judgment under Fed. R. Civ. P. 56, arguing the plaintiff has failed to provide sufficient evidence that Union Pacific breached any duty owed to him, and the plaintiff's accident was his own fault. Filing 64. The plaintiff has moved for partial summary judgment on the issue of liability. Filing 122. Union Pacific has also moved to exclude *all* of the plaintiff's expert witnesses. Filing 71 (Brandon Ogden); filing 75 (Dr. Herber Crockett); filing 78 (Jeffrey Opp); filing 81 (Dr. Jason Citta); filing 84 (Jesse Ogren); filing 87 (Dr. Tyler Sexson); *see* filing 83-1.

# I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042. Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. *See* Fed. R. Civ. P. 56(a).

The moving party must submit a statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law. NECivR 56.1(a)(1). Properly referenced material facts in the movant's statement are considered admitted for the purpose of summary judgment unless controverted in the opposing party's response. *See* NECivR 56.1(b)(1)(B). A response may not assert legal arguments except to make an objection to the evidentiary support for the asserted fact or the admissibility of that evidence. *Id.* Arguments about the relevance or materiality of an asserted fact may be raised in the argument section of a brief, but are not a proper basis for disputing that fact. *Id.*

## II. BACKGROUND

For the purpose of both parties' motions, the following facts, unless indicated otherwise, are considered undisputed[1] pursuant to Fed. R. Civ. P. 56(e)(2):

---

[1]    Both parties objected to nearly every stated fact in the other's statement of facts. *See* filing 104; filing 133. The plaintiff's objections mostly relate to an allegedly impermissible affirmative defense, which are overruled for the reasons discussed below. For its part, Union Pacific nearly always purported that the plaintiff's citation did not support the stated fact, even where the plaintiff directly quoted cited deposition testimony. *E.g.,* filing 133 at 3. Union Pacific also intermittently objected to the admissibility of some facts, though it failed to identify with much particularity to what cited evidence the objection applied, or what Federal Rule of Evidence might preclude the evidence's admission.

Any listed facts which were improperly disputed, including facts where the claimed dispute was not supported by cited evidence, are considered admitted for the purposes of both parties' motions. *See* NECivR 56.1(b)(1)(B). And the Court has done its best to review the admissibility of contested evidence. *But see* Fed. R. Civ. P. 56(c)(2); *Gannon Int'l, Ltd. v. Blocker,* 684 F.3d 785, 793 (8th Cir. 2012) (the standard at summary judgment is not whether

1. THE PLAINTIFF'S ACCIDENT

The plaintiff lives in North Platte, Nebraska. Filing 66 at 2. He used to work as a Union Pacific electrician. *See* filing 105-1 at 6. He had to stop working in 2020 for reasons not explained in the record. Before he could return to work, he had to be evaluated by Union Pacific managers to ensure he could physically perform his former job. *See, e.g.*, filing 133 at 2. The evaluation was scheduled for February 24, 2021, in Bailey Yard in North Platte.

When the plaintiff arrived at Bailey Yard for the evaluation, there was some snow in the railyard. The snow was at least several days old. The plaintiff had ice spikes in his locker and he could have put them on without permission from management. Filing 66 at 2. The plaintiff has walked in snow his whole life, and he knows how to walk safely in winter conditions. Filing 66 at 2. That day, he was wearing steel-toed boots. *See* filing 104 at 48.

The plaintiff met with his manager, Waylon Walchesky, and two other managers in the Bailey Yard mechanical shop. The group then walked into the railyard to complete the tasks associated with the plaintiff's evaluation. Walchesky led the evaluation, and the plaintiff alleges that Walchesky told the plaintiff where to walk and what tasks to perform. *See* filing 133 at 5-6. The parties dispute the level of control Walchesky had over the plaintiff and the evaluation.

The plaintiff boarded a locomotive to perform some tasks. According to the plaintiff's version of events, Walchesky directed the plaintiff to dismount on the north side of the locomotive when he was done, despite snow and ice on

---

the evidence is admissible, but whether evidence offered "*could* be presented at trial in an admissible form." (emphasis in original)). Any objections to facts stated herein are overruled without prejudice to reassertion if Union Pacific cares to present coherent, *specific* objections to any evidence at the appropriate time (at trial or otherwise).

that side. *See* filing 105-2 at 9; filing 105-10 at 1. The south side of the locomotive, in contrast, had almost no snow or ice. *See* filing 105-1 at 11. But the plaintiff exited the locomotive on the north side as instructed, despite the snow and ice. *See* filing 105-1 at 11. He had trouble keeping his balance, and he had a hand on the locomotive to steady himself while the group walked on the snow. Filing 105-1 at 9.

The plaintiff asked Walchesky whether he should be wearing ice spikes. The parties dispute this, but, according to the plaintiff, Walchesky said that they should have been wearing ice spikes, but because the evaluation was almost over, the plaintiff should just walk carefully. *See* filing 105-1 at 9; filing 105-7 at 3; *but see* filing 134-7 at 8. The group did not stop the evaluation so that the plaintiff could retrieve his ice spikes. At least one of the other managers was also walking unsteadily. *See* filing 105-7 at 3; *but see* filing 134-4 at 8. The plaintiff alleges that, shortly after he asked if he should be wearing ice spikes, he slipped and sustained injuries to his knee and shoulder. Filing 105-1 at 9. None of the managers saw him fall. *See* filing 105-7 at 3; filing 105-4 at 10; filing 105-9 at 1.

## 2. Union Pacific's Policies

In certain weather conditions, there is a light in the Bailey Yard mechanical shop that turns red to indicate that employees should take extra weather precautions such as wearing ice spikes or over-boots with aggressive tread. *See* filing 134-5 at 15-16. The "red light" in Bailey Yard is turned on "when the conditions are horrible outside," with snow and ice "everywhere." Filing 134-5 at 16. The light was off the day of the plaintiff's accident. When the light is on, *all* employees are recommended to take precautions. Filing 134-5 at 16. In other conditions, such as "patchy" snow or ice, management advises

particular employees to put on additional footwear if those employees are working in a particularly slippery area. *Id.*

All employees are provided with ice spikes and other protective gear. Employees all have ice spikes in their lockers, and have the option to use the equipment at any time, without explicit permission from management. *See* filing 66 at 3; filing 134-5 at 16. Employees are taught how to walk safely in slippery conditions to mitigate the risk of slipping or falling. *See* filing 105-13 at 5. And employees are trained to "stop the line," meaning if an employee feels unsafe, he can stop doing his job and request an alternative way to perform a task. *E.g.,* filing 134-5 at 22.

Union Pacific's "Safety Rules" instruct that a sand and salt mixture should be spread on ice before proceeding when icy conditions exist. Filing 105-13 at 5. The parties dispute whether this safety rule applies to management or employees. The parties also dispute whether this safety rule applies to just paved areas, such as sidewalks and parking lots, or to any walkway in a railyard. *Compare* filing 134-5 at 12 (deposition of Mike Cook), *with* filing 73-1 at 11 (plaintiff's safety expert's report).

## III. DISCUSSION

### 1. SUMMARY JUDGMENT

Enacted in 1908, FELA provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad or its agents. 45 U.S.C. § 51. The statute imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012); *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992).

FELA is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). So, the plaintiff must prove the customary common law elements of a negligence claim: duty, breach, foreseeability, and causation. *See Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 984 (8th Cir. 2020). The railroad's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances, and what would be anticipated as a result of a particular condition. *Ackley v. Chi. and N. W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987); *see also Burckhard v. BNSF Ry. Co.*, 837 F.3d 848, 853-54 (8th Cir. 2016); *Cowden*, 690 F.3d at 896.

Under FELA's relaxed standard of causation, a railroad will be liable if its negligence, or the negligence of any of its agents, played any part, even the slightest, in producing the employee's injury. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011). Questions of liability may not be taken from a jury merely because a question is close or doubtful. *Louisville & N. R. Co. v. Botts*, 173 F.2d 164, 167 (8th Cir. 1949). The jury has the right to make all reasonably possible inferences from the evidence as it chooses to accept; the Court may not search the record for conflicting circumstantial evidence to take a case away from the jury on the theory that proof gives equal support to inconsistent and uncertain inferences. *Id.*

The plaintiff alleges that Union Pacific failed to provide him with a reasonably safe place to work. He's offered evidence and argument to support several different alleged acts or omissions on Union Pacific's part which allegedly played a part in producing his alleged injuries. Both parties have moved for summary judgment. Because a number of material facts are still in dispute, both motions will be denied.

(a) Inadequate General Policies

The plaintiff's theories of negligence include alleged failures to provide safe and suitable tools for employment, to adopt or follow reasonable rules and procedures, and to inspect work areas and remedy hazardous conditions. *See* filing 103 at 6-7. More specifically, the plaintiff appears to argue that he should have been provided ice spikes; that Union Pacific should have done more to treat or remove the ice and snow in the railyard; and/or that Union Pacific should have required ice spikes be worn that day. Union Pacific argues that the plaintiff has failed to show enough evidence to submit to a jury that it breached its duty to provide a reasonably safe place to work. To an extent, the Court agrees, and the issues in this case should be narrowed as follows.

Regarding the failure to provide safe tools, there's no indication that Union Pacific breached that duty. The plaintiff avers that he had ice spikes in his locker, and he could have used them. The plaintiff's *real* theory appears to be that he asked if he should get his ice spikes and was told not to worry about it. That theory is actually based on Walchesky's allegedly negligent actions, not any failure to *provide* safe tools by Union Pacific. That issue—the *real* issue on this point—is discussed below.

The plaintiff also argues that Union Pacific was negligent because it failed to activate the "red light" in Bailey Yard. However, this theory is unsupported by sufficient evidence to survive summary judgment. The plaintiff argues that Union Pacific was negligent because it did not *require* ice spikes to be worn on the day of the alleged accident. *See* filing 123 at 9. The red light is activated "when the conditions are horrible outside," with snow and ice "everywhere." Filing 134-5 at 16. When the red light is on, Union Pacific managers encourage all employees to wear additional anti-slip footwear. It is uncontroverted that only parts of Bailey Yard contained snow and ice that day.

*See* filing 124 at 2; filing 133 at 5. There's no evidence to support even an inference that Union Pacific breached its duty when it did not *require* ice spikes be worn by *all employees* in Bailey Yard that day. The Court concludes that the plaintiff has not provided evidence supporting even an inference that Union Pacific breached its duty when it did not turn on the red light in Bailey Yard on February 24, 2021.[2] *See* Fed. R. Civ. P. 56(g).

The plaintiff has also asserted that Union Pacific was negligent because it did not salt or sand the walkway in the dirt yard. The evidence indicates that it is not Union Pacific's policy to salt or sand dirt walkways in Bailey Yard, because such measures would be ineffective. *See* filing 134-5 at 12. Rather, Union Pacific only treats snow and ice on paved areas, including parking lots and walkways. The plaintiff has provided an expert opinion[3] that Union Pacific's conduct fell below the industry standard of care when it did not remove or treat the ice in the railyard, or otherwise mark the hazard so that employees could avoid it. *See* filing 73-1 at 12. The plaintiff also argues that Walchesky should have instructed the plaintiff to walk on the south side of the locomotive, rather than the north side, to avoid the icy walkway. *See* filing 105-1 at 19. Accordingly, the Court finds that the plaintiff has provided enough evidence on this theory of negligence to submit it to a jury.

---

[2] To be clear, evidence regarding the red light *might* be relevant to the other issues in the case, but cannot be a standalone theory of Union Pacific's alleged breach.

[3] Union Pacific has moved to exclude this expert's opinion. Filing 71. For reasons explained below, that motion will be (mostly) denied.

(b) Negligence of Railroad Manager

The plaintiff alleges that the railroad failed to provide a reasonably safe place to work through the acts of another Union Pacific employee, Walchesky. *See* 45 U.S.C. § 51 (railroad is liable for injuries "resulting in whole or part from the negligence of any . . . employees"); *see also Gallose v. Long Island R. Co.*, 878 F.2d 80, 83 (2d Cir. 1989). The plaintiff asserts that Walchesky knew that the path the plaintiff was walking on was icy, and Walchesky said that the plaintiff should have ice spikes on, but Walchesky told the plaintiff to continue on with the evaluation anyway. What Walchesky specifically said to the plaintiff is contested, but the plaintiff has provided enough evidence to survive summary judgment on the issue of Walchesky's neglect for the plaintiff's safety.

Union Pacific argues that the plaintiff could have, without explicit permission from Walchesky, retrieved his ice spikes, or he could have "stopped the line" and insisted on retrieving his ice spikes or walking on the other side of the locomotive. The plaintiff seeks to exclude much of that evidence, arguing that the "assumption of the risk" defense is unavailable to a railroad-defendant in a FELA case. But the Court sees this evidence as admissible to support the railroad's contributory negligence defense.

A plaintiff in a FELA case is contributorily negligent if a railroad proves a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *Birchem v. Burlington N. R. Co.*, 812 F.2d 1047, 1049 (8th Cir. 1987). By contrast, assumption of the risk is a plaintiff's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties. *Id.* A railroad may not advance an assumption of the risk defense in a FELA case. *See id.*

10

Union Pacific argues that, while the plaintiff was doing his job according to Walchesky's instructions, the plaintiff acted unreasonably because he could have stopped the line or worn his ice spikes. *See Ackley*, 820 F.2d at 267 ("There is no question that an employee in a FELA action has a duty to use reasonable care in the workplace."). Only a jury can decide if the plaintiff acted reasonably in the face of Walchesky's advice. But to prove contributory negligence, Union Pacific must prove that the plaintiff committed a careless act or omission; the mere fact that the plaintiff fell while walking where directed is insufficient. *See Birchem*, 812 F.2d at 1049. A jury can be instructed accordingly.

The plaintiff's evidence supports an inference that Walchesky neglected to protect the plaintiff from a known hazard, and that negligence caused the alleged injuries. It's disputed whether Walchesky "directed" the plaintiff to walk on the icy northern side of the locomotive. Despite Union Pacific's contentions, this case isn't like *Borum v. Grand Trunk W. R.R.*, 659 F. Supp. 2d 853, 858 (E.D. Mich. 2009), where a railroad employee slipped "because a 'little' patch of ice had developed," unknown to the railroad. The plaintiff has presented evidence that snow was present in the railyard for several days before the plaintiff's alleged accident. Arguably, Union Pacific knew or should have known that there was a dangerous condition in the railyard, and its failure to treat the snow or amend the plaintiff's tasks created an unreasonably safe working environment.

Union Pacific also argues that the plaintiff failed to show evidence that Union Pacific was on notice of the allegedly dangerous condition. Filing 65 at 7; *see also Peyton*, 962 F.2d at 833 ("an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury"). According to Union Pacific, transient conditions created by weather do not create liability under FELA. Filing 65 at 7. However, the plaintiff has

provided evidence, through his safety expert and through other testimony, that Union Pacific knew or should have known about the icy conditions in Bailey Yard by doing a thorough investigation of the railyard in places it knew employees would be walking. The snow was not a recent, "transient" condition; it was a few days old, and the plaintiff has provided sufficient evidence that Union Pacific knew or should have known that the ice was in the yard. And Walchesky, a Union Pacific manager, was walking on the alleged snow, and allegedly told the plaintiff that they should be wearing spikes, but said they should keep on going regardless. The evidence supports an inference that the plaintiff's injury was reasonably foreseeable to Union Pacific. *See Peyton*, 962 F.2d at 833.

Union Pacific argues that the plaintiff has failed to produce evidence that the railroad "breached its duty merely because snow was on the ground in an outside railyard." Filing 65 at 5. Union Pacific argues that it is a normal part of the plaintiff's job to work outside in snowy conditions, and the fact that he fell in this circumstance does not mean Union Pacific failed to provide a reasonably safe place to work. Union Pacific repeatedly provided the same picture of the railyard, apparently reflecting the conditions present the day of the plaintiff's accident. *See, e.g.,* filing 65 at 1; filing 72 at 1; filing 132 at 2; filing 115 at 2.

But Union Pacific asks this Court to improperly give weight to that photograph (which may or may not be admissible) and to discount the plaintiff's evidence that he was directed to walk on the snow, that he was told he needed ice spikes but should just walk carefully, and that usually in the railroad industry, these types of walkways are treated or marked in some way if there is ice or snow present. On summary judgment, the Court may not weigh the evidence or the credibility of the witnesses—that job is for a jury.

12

Both parties can present their version of events to the trier of fact. Based on the numerous facts still in dispute, particularly involving the reasonableness of both parties, summary judgment is not appropriate for either side. A jury can assess whether Union Pacific breached its duty to provide a reasonably safe place to work, and whether any negligence on the plaintiff's part contributed to the alleged injury.

## 2. *"DAUBERT"* MOTIONS

Union Pacific moved to exclude all of the plaintiff's experts, purportedly under the standard outlined in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993). *See* filing 71; filing 75; filing 78; filing 81; filing 84; filing 87.[4] The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether a particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. *Id*. at 723.

In exercising its gatekeeping function, the Court must make a preliminary assessment of whether the reasoning or methodology underlying the proposed expert testimony is valid and of whether that reasoning or

---

[4] For some reason, Union Pacific has a practice of attaching the plaintiff's *already-filed* briefs in opposition as an exhibit to its reply briefs. *See* filing 111-1. It has also attached docketed court orders from this case as exhibits. *See* filing 37. The parties are encouraged to simply cite to already-filed evidence, briefs, or court orders, and not re-upload documents which have already been docketed.

13

methodology properly can be applied to the facts in issue, focusing specifically on the methodology and not the conclusions. *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000-01 (8th Cir. 2019). To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006); *In re Wholesale Grocery Prod.*, 946 F.3d at 1001.

A district court is not required to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Id*. An expert opinion that is "so fundamentally unsupported that it can offer no assistance to a jury" will be excluded. *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). Still, "cases are legion that under *Daubert*, liberal admission is prevalent and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *In re Wholesale Grocery Prod.*, 946 F.3d at 1001 (cleaned up). As a general rule, deficiencies in an expert's factual basis go to weight and not admissibility. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 786 (8th Cir. 2021); *Loudermill*, 863 F.2d at 570.

However, while styled as *Daubert* motions, some of Union Pacific's arguments resemble motions in limine, based on alleged procedural or evidentiary deficiencies. *Daubert* involves a specific analysis, outlined above, and does not cover every argument advanced in a motion to exclude an expert. Union Pacific moved to exclude a safety expert, a vocational expert, an economist, and three medical doctors. Only the opinions of the safety expert relate to the parties' arguments in their summary judgment motions. The Court declines to "whack" every one of the other "moles" that have been raised.

14

In the interest of judicial efficiency, unless specifically addressed below, Union Pacific's objections to the plaintiff's witnesses are overruled without prejudice to reassertion in a timely pretrial motion in limine.[5]

### (a) Brandon Ogden

Union Pacific asserts that the expert opinions of Brandon Ogden, a railway safety and operations consultant, should be excluded as unreliable. Union Pacific argues Ogden's opinions lack supporting facts and data, and are premised on his *ipse dixit* rather than a scientific methodology. *See* filing 72 at 2. Ogden's expected testimony involves his opinion that Union Pacific's conduct fell outside the standard of care within the industry, for various alleged acts or omissions.

The basis of Ogden's opinions include his 17 years of knowledge and experience in the railroad safety industry. *See* filing 73-1 at 2. While he was a manager for BNSF, Ogden's job was to inspect and investigate railroad operations incidents. According to Ogden, to form his opinions, he used the same methodology he did during his tenure as a BNSF manager to diagnose the causes of accidents in railyards. He analyzed four broad categories: accepted operational practices, the actions of management, the physical and environmental conditions, and employee training and behavior. Filing 73-1 at 3. Briefly summarized, Ogden's opinions are that Union Pacific did not meet the industry standard of care because:

---

[5] That said, even a motion in limine is often premature, because in most cases, it's difficult to predict exactly how a witness will testify and what might be objectionable about the testimony, and it's best to reserve rulings on *potentially* objectionable testimony for the context of trial.

- Union Pacific did not keep its walkways in a reasonably safe condition, either because Union Pacific failed to inspect the walkway at issue or failed to lay down salt or sand, or otherwise indicate the hazard through cones or warning signs. *See* filing 73-1 at 13.

- Union Pacific failed to provide the plaintiff with the proper footwear after the plaintiff asked if he needed his ice spikes while walking with Walchesky. Filing 73-1 at 13-14.

- Union Pacific should not have instructed the plaintiff to walk on the north side of the locomotives where there was snow. Filing 73-1 at 14.

- Union Pacific's safety protocol instructing employees to "stop the line" was not a reasonable precaution to protect the plaintiff's safety. *See* filing 73-1 at 15.

- The plaintiff did what was reasonably required of him under Union Pacific's safety rules. Filing 73-1 at 16.

According to Union Pacific, Ogden's opinions are unreliable because he failed to personally inspect the worksite, he never worked for Union Pacific, and he misunderstood Union Pacific's safety rules. The Court does not agree. Ogden relied on materials provided by the plaintiff, including handwritten statements, deposition testimony, correspondence, photographs, and Union Pacific's general code of operating rules. Filing 73-1 at 4-11. This is a sufficient factual basis to provide a helpful opinion to a jury. The alleged shortcomings

16

go to weight and not admissibility. *See In re Bair Hugger*, 9 F.4th at 786. There's no requirement, in the Federal Rules or otherwise, that an expert must have worked for a defendant to opine on that defendant's safety practices. To the extent Union Pacific argues Ogden misapplied the facts he was provided, that argument also goes to weight, not admissibility. *See Loudermill*, 863 F.2d at 570. And that is precisely what cross-examination is designed for.

Ogden relied on his experience in the field of railroad safety, the facts of this case, and the methodology he employed to diagnose railroad accidents, which is more than *ipse dixit*. Union Pacific's disagreement with how Ogden came to his opinion does not render it unreliable or inadmissible. (Again, cross-examination . . . .) He explained his methodology and provided examples of what type of conduct would rise to the industry standard, based on his industry experience. *See Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 270 (2007) (expert was not reliable where he opined that a railroad breached the standard of care by performing an inadequate inspection, but did not explain "what kind of inspection would have been reasonable"); *cf. Peyton*, 962 F.2d at 834. A layperson is likely unfamiliar with what railroads might do to clear snow and ice in a railyard, and Ogden's expertise will be helpful to a jury in that regard, particularly given the unclear language in Union Pacific's safety rules. *See* filing 105-13.

The Court will grant Union Pacific's motion in one respect. Ogden opined that Union Pacific failed to complete a proper job safety briefing when the plaintiff first arrived at Bailey Yard. *See* filing 73-1 at 15. Union Pacific argues that this is an unpled theory of negligence. The Court agrees, and is not convinced that that the plaintiff's catch-all provision in his complaint provides sufficient notice that the job briefing would be a factual basis upon which Union Pacific could be found negligent. *See* filing 1 at 3.

17

The plaintiff knew from the outset of the litigation what happened during the job briefing. Yet the job briefing is scarcely mentioned in the depositions relied upon by the expert; apparently neither party was aware that this was an issue the plaintiff would litigate. It would be unfairly prejudicial to Union Pacific to permit the plaintiff to pursue this theory of negligence after the parties already engaged in substantial discovery on other developed issues. The plaintiff also does not pursue this theory of negligence in any of his summary judgment briefing. *See* filing 123; filing 103. For these reasons, Union Pacific's motion to exclude Ogren's opinion regarding the allegedly insufficient job safety briefing will be granted.

### (b) Dr. Herber Crockett

Next, Union Pacific seeks to exclude some opinions from Dr. Herber Crockett, the plaintiff's treating physician. *See* filing 76; filing 77-1 at 2. Dr. Crockett is expected to testify that, based on MRI findings, the plaintiff suffered a traumatic tear of his rotator cuff caused by the accident at issue in this case. Union Pacific argues these statements are speculative and lack sufficient facts or data.

A medical opinion about causation, based upon a proper differential diagnosis that systematically rules out other possible causes, is sufficiently reliable to satisfy *Daubert*. *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). An expert need not rule out every other possible cause of an injury in order to satisfy the *Daubert* standard, and can rely on his experience with patients, discussions with peers, and other tools of the trade. *See Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003). A doctor's methodology is unreliable "only where a defendant points to a plausible

alternative cause and the doctor offers *no* explanation for why he . . . concluded that was not the cause." *Id.* (emphasis in original).

In this case, Dr. Crockett attempted to differentiate what role the plaintiff's alleged fall played in his injury. Filing 77-2 at 3. He performed an MRI, reviewed the plaintiff's pre-existing conditions, and attempted to conservatively treat the plaintiff's injury. Filing 77-2 at 3. He determined that the plaintiff's preexisting conditions did not significantly impact the plaintiff's rotator cuff injury, and the injury was caused by the plaintiff's reported fall. Based on the record presently before the Court, Dr. Crockett relied on more than the plaintiff's subjective explanation of the accident in forming his opinion. *See Kudabeck*, 338 F.3d at 862; filing 77-2 at 4. Union Pacific's arguments go to weight, not admissibility, and a jury can certainly consider Union Pacific's cross-examination and contrary evidence on these issues. *See Kudabeck*, 338 F.3d at 862.

Union Pacific also argues that the opinions were not sufficiently disclosed. The amended case progression order indicates that the opinions of treating physicians are limited to those stated within their treatment documentation, unless those opinions are separately and timely disclosed. Filing 37 at 1 n.1. While Union Pacific avers that the plaintiff intends to offer opinion testimony from Dr. Crockett that does not appear in his treatment documentation, it hasn't shown to this Court's satisfaction that those separate opinions were not properly disclosed. *See* filing 77-1 at 1.

The plaintiff's disclosure adequately provides the basis of the opinions. Union Pacific has not sufficiently shown that the opinions expected to be offered go beyond the case progression order. *See* filing 37. Union Pacific's other arguments, regarding the lack of foundational support for future medical treatment and whether the plaintiff is able to return to work, also go to weight

19

and not admissibility. Union Pacific may contest the factual basis of those opinions on cross-examination, but the Court will not exclude them. The motion to exclude Dr. Crockett is denied in its entirety.

### (c) Dr. Sexson

Dr. Tyler Sexson is the plaintiff's treating physical therapist. Union Pacific asserts that his opinions regarding the plaintiff's work limitations are unreliable. Union Pacific further asserts that Dr. Sexson's opinions should be limited to the treatment records, particularly involving the plaintiff's need for future treatment.

The plaintiff failed to respond to Union Pacific's argument that Dr. Sexson should not be allowed to testify about the plaintiff's need for future therapy. *See* filing 99. The Court will grant Union Pacific's motion in that respect. However, Dr. Sexson may give his opinion that the plaintiff is unable to return to work as an electrician, based on findings in the functional capabilities evaluation that Dr. Sexson performed. *See* filing 89-2 at 1. For the same reasons discussed above, Union Pacific's disagreements with Dr. Sexson's opinions about the plaintiff's ability to return to work and his work limitations go to weight, not admissibility. *See In re Bair Hugger,* 9 F.4th at 778; *Bonner v. ISP Tech., Inc.,* 259 F.3d 924, 929-30 (8th Cir. 2001). The Court will not exclude those opinions.

### (d) Dr. Citta

Dr. Jason Citta is the plaintiff's primary care physician. He is designated as a rebuttal witness. Filing 83-1 at 4. Union Pacific argues that Dr. Citta is improperly designated as a rebuttal witness. It also argues that Dr. Citta's opinions are speculative and lack sufficient factual foundation. Union Pacific

also asserts that "suspicious circumstances" indicate Dr. Citta is actually a retained expert.

Dr. Citta is expected to testify to his treatment of the plaintiff, the medical necessity of those treatments, and his disagreement with Union Pacific's medical expert, Dr. Rodney Herrin. *See* filing 83-1 at 4. Dr. Herrin is expected to testify that, in his opinion, that the plaintiff would not be able to return to work for medical reasons unrelated to the Bailey Yard accident. Dr. Citta is expected to rebut that opinion based on his care and treatment of the plaintiff. *See* filing 83-1 at 4.

The function of rebuttal testimony is to explain, repel, counteract, or disprove evidence of the adverse party. *Marmo*, 457 F.3d at 759. Rebuttal evidence is used to challenge the evidence or theory of an opponent, and may not be used to establish a case-in-chief. *Id.* So, Dr. Citta's testimony must be confined to that type of testimony to conform with Rule 26(a)(2)(D)(ii). Obviously, the nature and extent of Dr. Citta's rebuttal testimony will depend on the nature and extent of Dr. Herrin's testimony. The Court can't assess Union Pacific's objections until Dr. Herrin actually testified.

The plaintiff may not call Dr. Citta as part of his case-in-chief; Dr. Citta is designated as a rebuttal witness, and he may only testify after Dr. Herrin has testified, and may testify *only on the issues* raised by Dr. Herrin. *See Marmo*, 457 F.3d at 759. But Dr. Citta will naturally need to provide some context for his disagreement with Dr. Herrin, which will involve some discussion of his treatment of the plaintiff. And Union Pacific is welcome to challenge that treatment and how Dr. Citta came to his conclusions.

Union Pacific's other arguments go to weight and not admissibility. *See In re Bair Hugger*, 9 F.4th at 778. The Court is unpersuaded that the plaintiff's expert disclosure is insufficient regarding the future treatment the plaintiff

requires. And outside the context of trial, the Court is unable to rule on foundational issues involving exhibits that may or may not be introduced.

The Court is further unpersuaded that there is anything "fishy" about the plaintiff's designation of Dr. Citta as a non-retained expert. The plaintiff timely disclosed Dr. Citta as a rebuttal witness, and Union Pacific had the opportunity to depose Dr. Citta and investigate any "suspicious circumstances" about his designation. Non-retained experts are provided with materials from lawyers *all the time*, and it's not unusual for non-retained experts to confer with lawyers and speak to an opponent's expert opinions.

Nor is it unusual for a non-retained expert to act as a rebuttal witness. It makes total sense that the plaintiff initially thought that Dr. Citta's testimony would not be helpful, but *after* it investigated Dr. Herrin's opinion, decided that a doctor with years of experience treating the plaintiff would rebut Dr. Herrin's opinions about the plaintiff's preexisting conditions and past work experience. This is proper rebuttal testimony.

The motion to exclude is denied, though Union Pacific may make any trial objections to the extent Dr. Citta's rebuttal testimony goes beyond the scope of Dr. Herrin's testimony.

### (e) Jeffrey Opp and Jesse Ogren

The last *Daubert*-ish motions are interconnected. They concern the plaintiff's economist, Jeffrey Opp, and the plaintiff's vocational expert, Jesse Ogren. Union Pacific's argument goes something like this: Opp's calculations for lost wages are based on the assumption that the plaintiff is unable to return to work, and that assumption is premised on faulty opinions from Ogren, who based *his* opinions on faulty medical opinions. So, the Court will discuss these motions to exclude together.

Starting with Ogren, the vocational expert: Again, Union Pacific's arguments go to weight and not admissibility. Ogren's report indicates that one potential job matched the plaintiff's skill, experience, and work restrictions. Ogren relied on the medical opinions of the plaintiff's treating physician, Dr. Sexson, which is appropriate because Ogren is not a doctor. Ogren still performed his own tests to assess the plaintiff's vocational skills, and Ogren attempted to determine what jobs could be appropriate for a person with the plaintiff's skills, experience, and work restrictions.

The Court is not persuaded that it should adopt Union Pacific's interpretation of *Quinones-Pacheco v. Am. Airlines*, 979 F.2d 1 (1st Cir. 1992), a decades-old out-of-circuit case. Filing 85 at 5. That circuit court determined that it wasn't error to exclude an expert in a case where the plaintiff presented no evidence that he was totally disabled. But weighing the reliability of expert witnesses is in a district court's discretion, and this Court does not consider Ogren's opinion so lacking. *See Bonner*, 259 F.3d at 930. Ogren considered the work limitations imposed by Dr. Sexson, and Union Pacific's arguments to exclude those work opinions go to weight, not admissibility. *See* filing 88 at 4. If Union Pacific identified other jobs that might be suitable for the plaintiff, given his limitations, it is welcome to present that evidence to a jury. *See In re Bair Hugger*, 9 F.4th at 778 ("presentation of contrary evidence" is a means of addressing "shaky but admissible evidence").

While Opp did not account for any potential mitigation as contemplated by Ogren, that doesn't render his calculations inadmissible. It's not an economist's job to determine whether a person is medically able to work or not. Rather, experts can assume that a plaintiff is able to prove his case through other evidence, and can confine their testimony to the subject matter of their expertise. The economist did his job: he calculated the wages based on what

the plaintiff was expected to earn had he remained an electrician with Union Pacific. Whether those wages should be reduced by any amount is a separate matter for the parties to present to a jury. And it's Union Pacific's burden, not the plaintiff's expert's, to present evidence of mitigation. *See Bissett v. Burlington N. R. Co.*, 969 F.2d 727, 731 (8th Cir. 1992) (mitigation of damages is an affirmative defense).

And for the reasons already thoroughly explained, Union Pacific's disagreement with the factual bases of Opp's calculations—*i.e.*, Opp relied on other jobs within Union Pacific rather than the plaintiff's specific job—go to weight and not admissibility. *See In re Bair Hugger*, 9 F.4th at 778. The jury will have the tools to determine what weight to give Opp's calculations, and whether the figures presented should be reduced for any reason.

There's undoubtedly a domino effect for the plaintiff: If a jury does not find the plaintiff's medical experts to be persuasive, then the opinions of Opp and Ogren would likewise be unavailing. But that much will be apparent to any trier of fact. If a jury decides lost wages are warranted in this case, the expected testimony of the plaintiff's experts will be helpful to the trier of fact to determine the nature and extent of the plaintiff's injury and expected future wages. The plaintiff needs the testimony of his doctors to prove his *prima facie* case—that he was injured as a result of his alleged fall in Bailey Yard. But the vocational expert and the economist may assume that the plaintiff will clear this hurdle, and for the reasons discussed above, Union Pacific has not given the Court any reason to exclude or discredit the plaintiff's doctors' opinions. The motions to exclude Opp and Ogren will be denied in their entirety.

24

IV. CONCLUSION

Based on the numerous factual issues still in dispute, both parties' motions for summary judgment will be denied, and this case will move forward to trial. The parties are encouraged to find some common-sense ground upon which to agree, rather than engage in petty squabbles about evidentiary or procedural issues. A trial will no doubt be hard-fought, as it should be, but for the benefit of everyone involved, the parties should focus on the *key issues* of the case. On that note, the plaintiff's motion to strike one of Union Pacific's untimely filed reply briefs is denied. Accordingly,

IT IS ORDERED:

1.    Union Pacific's motion for summary judgment (filing 64) is denied.

2.    Union Pacific's motion to exclude Brandon Ogden (filing 71) is granted in part and denied in part.

3.    Union Pacific's motion to exclude Dr. Herber Crockett (filing 75) is denied.

4.    Union Pacific's motion to exclude Jeffrey Opp (filing 78) is denied.

5.    Union Pacific's motion to exclude Dr. Jason Citta (filing 81) is denied.

6.    Union Pacific's motion to exclude Jesse Ogren (filing 84) is

denied.

7.    Union Pacific's motion to exclude Dr. Tyler Sexson (filing 87) is granted in part and denied in part.

8.    The plaintiff's motion for summary judgment (filing 122) is denied.

9.    The plaintiff's motion to strike (filing 130) is denied.

Dated this 20th day of December, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge